UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ABINEL ZENON,                    )
        Plaintiff,               )
                                 )
                                 )
v.                               )
                                 )
                                 )    C.A. No. 3:16-cv-30129-MAP
                                 )
ASSOCIATE JUSTICE                )
MARGARET GUZMAN, in her          )
Official Capacity,               )
        Defendant.               )
                                 )


MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO DISMISS
(Dkt. Nos. 15 and 29)

January 8, 2018

PONSOR, U.S.D.J.


I.   INTRODUCTION

        Plaintiff Abinel Zenon has filed this § 1983 action

against Defendant Associate Justice Margaret Guzman of the

District Court Department of the Massachusetts Trial Court.

He seeks a declaratory judgment to the effect that an open-

ended gag order issued by Defendant while presiding over a

now-concluded criminal trial in which Plaintiff was a defendant violates his rights under the First Amendment.

Defendant moved to dismiss (Dkt. No. 15), and the motion was referred to Magistrate Judge Katherine A. Robertson for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72. Judge Robertson issued her recommendation, meticulously laying out the alleged facts, summarizing the applicable law, and analyzing the merits of each of Defendant's arguments. She recommended that Defendant's motion to dismiss be denied. (Dkt. No. 29.) Defendant filed a timely objection to that Report and Recommendation, offering -- contrary to normally permitted practice -- a new argument for dismissal. (Dkt. No. 30.)

For the reasons set forth below, the court will decline to adopt the Report and Recommendation and will allow Defendant's motion to dismiss, without prejudice to Plaintiff's re-filing for relief in state court.

## II.  BACKGROUND

On April 11, 2013, Plaintiff was arraigned in the Springfield District Court on two counts of assault and

battery.  Plaintiff was alleged to have assaulted two court officers while he was at the Hampden County Hall of Justice addressing a charge of driving with a suspended license. Plaintiff asserted an affirmative defense of self-defense; he claimed that the court officers had attacked him without provocation, while insulting him with ethnic slurs.

Plaintiff's defense attorney, who also represents him in the present action, uncovered evidence that one of the court officers involved in the incident, Alexander Sierra (Sierra), had previously been accused of using excessive force against a number of individuals.  On July 29, 2015, in the context of Plaintiff's pending criminal trial, Defendant granted Plaintiff access to some documents concerning Sierra's prior conduct.  These documents included administrative records of the trial court, two years of reports on the officer by the Springfield Police Department, and two years of Trial Court Incident Reports authored by Sierra himself.  The documents revealed the names of twenty-three individuals against whom Sierra had used force over a two-year period and the name of one individual who had filed a complaint with the Springfield Police Department alleging

that Sierra had used excessive force.

These records were provided to Plaintiff's attorney pursuant to a protective order issued by Defendant. That order, partly written and partly oral, permitted Plaintiff's attorney and the District Attorney's office to disclose protected information to office staff as necessary to prepare pleadings and other documents. However, it prohibited Plaintiff's attorney, but not the District Attorney's office, from discussing the protected information with anyone, including an investigator, without Defendant's permission. The oral order also prohibited Plaintiff's attorney from contacting the individuals named in the records to discuss the events described.

Plaintiff's attorney, through her independent investigation, had already spoken to victims and witnesses about incidents involving Sierra, and she had filed descriptions of them with the Springfield District Court in public documents. Plaintiff's attorney moved to exempt these incidents from the scope of the protective order, but Defendant denied the motion. Upon further motion, Plaintiff was permitted to contact individuals who had witnessed four

of the relevant incidents, as well as one previously-known victim.

Furthermore, Defendant granted two witnesses' written requests to have the protective order lifted with regard to incidents in which they were involved. The alleged facts with regard to these incidents were particularly ugly. In one instance, Sierra was alleged to have thrown a pregnant juvenile onto the ground, without justification, injuring her so badly that she suffered a miscarriage. In another instance, Sierra allegedly attacked a woman, again without justification, as she attempted to enter the court clerk's office. Both these women were eventually charged with assaulting Sierra.

Plaintiff filed a series of motions requesting that the protective order be vacated with respect to various additional individuals, so that they could be interviewed and summonsed for trial, and so that the remaining use-of-force incidents could be investigated. Defendant denied all these motions. Plaintiff's attorney objected, citing the First Amendment. Defendant noted the objection without explicitly addressing Plaintiff's constitutional argument.

On September 23, 2015, Plaintiff filed a petition
requesting that the Massachusetts Supreme Judicial Court
(SJC) vacate the protective order and stay the criminal
trial.  On October 1, 2018, a single justice of the SJC
denied the petition.

On October 5, 2015, Plaintiff submitted to sufficient
facts in the underlying criminal case.  The assault and
battery charges were continued without a finding of guilt
and without Plaintiff stipulating to the alleged conduct.
With this, the criminal case against Plaintiff was over; no
appeal was taken.

On February 4, 2016, the SJC affirmed the single
justice's ruling in a rescript opinion, noting that "it is
clear that Zenon had an adequate alternative remedy."  <u>Zenon
v. Commonwealth</u>, 473 Mass. 1023, 1024 (2016).  The opinion
went on to say:

> At the time of the single justice's decision, the
> charges were still pending.  Had Zenon been tried
> and convicted of any offense, he could have
> challenged the protective order on direct appeal.
> ...  If Zenon believes that the records have any
> continuing significance now that the charges have
> been resolved, he could move in the District Court
> for termination or modification of the protective
> order and, if such a motion is denied, appeal in

the ordinary course from that ruling.

Id.

After the conclusion of Plaintiff's criminal case,
Plaintiff was approached by other individuals who wished to
obtain documents regarding allegations of misconduct by
Sierra for use in legal proceedings they were involved in.
Defendant's ongoing protective order has hampered Plaintiff
and his lawyer in providing assistance to these individuals
and from pursuing the investigation further themselves.

Plaintiff initiated this action on July 14, 2016,
alleging that the protective order violated his First
Amendment right to freedom of speech. The procedural
history of the case is somewhat unusual. The original
complaint named as Defendants both Justice Guzman and the
Massachusetts Trial Court, and it offered two counts, the
first based on the First and Fourteenth Amendments to the
United States Constitution, and the second based on the
Massachusetts Declaration of Rights. (Dkt. No. 1.) No
explicit reference was made in this complaint to 42 U.S.C. §
1983. Defendant's motion to dismiss, filed on January 3,
2017, was directed at this original complaint. (Dkt. No.

15.)  The motion was argued before Judge Robertson on April

11, 2017.  (Dkt. No. 23.)  Before the Report and

Recommendation issued, however, Plaintiff filed an amended

complaint, dropping the claim against Defendant

Massachusetts Trial Court and asserting only one claim for

relief, explicitly pursuant to 42 U.S.C. § 1983 and against

only Defendant Justice Guzman.  (Dkt. No. 28.)

On August 23, 2017, Judge Robertson recommended that

Defendant's motion to dismiss be denied, focusing on the

one-count amended complaint. (Dkt. No. 29.)  On September 6,

2017, Defendant filed a timely objection to that Report and

Recommendation, asserting (as noted above) a new argument --

judicial immunity -- which was not raised before the

Magistrate Judge. (Dkt. No. 30.)

On October 20, 2017, the undersigned issued an order

requiring supplemental briefing on three topics: first,

whether assertion of the entirely new argument was

permissible; second, given that the criminal case had been

resolved, whether this case was now moot; and, third,

whether the availability of the state court remedy noted by

the SJC -- _i.e._, a motion in the state district court for

termination or modification of the protective order, with an
appeal to the SJC if necessary -- made resort to this
federal court inappropriate or improper.  (Dkt. No. 32.)

Further briefing on these additional questions
terminated on November 29, 2017.  At part of Defendant's
submission, counsel confirmed that the protective order
still continued in effect, even after the conclusion of the
criminal case that generated it.

### III.  <u>DISCUSSION</u>

On a motion to dismiss for failure to state a claim,
the court must take as true the allegations of the
complaint, as well as any reasonable inferences that may be
drawn in the plaintiff's favor.  Fed. R. Civ. P. 12(b)(6).
In order to withstand a motion to dismiss, the complaint
must allege "a plausible entitlement to relief."  <u>Bell Atl.</u>
<u>Corp. v. Twombly</u>, 127 S. Ct. 1955, 1967 (2007).

In her original motion to dismiss, Defendant advanced
four arguments supporting dismissal: (1) that the Eleventh
Amendment bars this suit in federal court; (2) that the
<u>Younger</u> abstention doctrine requires, or at least counsels,
dismissal; (3) that this court lacks subject matter

jurisdiction over the complaint pursuant to the Rooker-
Feldman doctrine; and (4) that the complaint is barred by
collateral estoppel, or what is often termed "issue
preclusion."

Each of these arguments was carefully analyzed and
rejected in Judge Robertson's Report and Recommendation.
Defendant's subsequent objection cursorily reasserted all
four initial arguments for dismissal and, as noted, added an
additional justification for dismissal, contending that as a
judicial officer acting in an adjudicatory capacity
Defendant was immune to suit under 42 U.S.C. § 1983. (Dkt.
No. 30.)

Two of the five arguments offered by Defendant in
support of the motion to dismiss -- Eleventh Amendment
immunity and collateral estoppel -- manifestly lack force
and, for the reasons well articulated in the Report and
Recommendation, may be quickly disposed of.

First, longstanding authority identified by Judge
Robertson makes clear that lawsuits seeking prospective
equitable relief in the face of unconstitutional conduct by
a state official are not barred by the Eleventh Amendment.

Second, collateral estoppel is no bar to this suit, because
the issue Plaintiff is attempting to litigate here --
whether Defendant's protective order violates the First
Amendment -- has so far not been directly addressed in the
state court litigation.

The question whether this lawsuit is barred pursuant to
the abstention doctrine set forth originally in <u>Younger v.
Harris</u>, 401 U.S. 37 (1971), or for lack of jurisdiction
under the <u>Rooker-Feldman</u> doctrine, <u>District of Columbia
Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), and <u>Rooker
v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), is more vexed.

The Report recommends that the motion to dismiss based
on <u>Younger</u> abstention be denied because no state proceeding
is ongoing, as required by <u>Middlesex County Ethics Committee
v. Garden State Bar Association</u>, 457 U.S. 423 (1982).  In a
sense this is true; the criminal case is over.  In another
sense, however, the state case is continuing.  Since the
issuance of the Report and Recommendation, Defendant has
confirmed that the protective order currently continues in
effect, even after the resolution of the criminal
proceeding.  Equally importantly, the SJC has laid out a

clear path, within the state judicial procedures, to obtain

a review of that order.  Indeed, the SJC has, in effect,

invited Plaintiff to obtain review of Defendant's protective

order by moving to terminate or amend it in state court and,

if necessary, appeal an adverse ruling to the SJC itself.

Zenon v. Commonwealth, 473 Mass. at 1024.

As Judge Michael Boudin observed in Maymo-Melendez v.

Alvarez-Ramirez, 364 F.3d 27, 32 (1st Cir. 2004): "Although

Younger is ordinarily described as applying where the state

case or proceeding is 'ongoing,' a moment's reflection

suggests that this cannot be the whole story."  The state

court process, he noted, must be viewed as a "continuum from

start to finish."  Id. at 35.  Given this, there "cannot at

any point on the continuum be an automatic right to detour

into federal court because [a plaintiff is] unhappy with an

initial answer."  Id.  Maymo-Melendez involved an

administrative procedure; its logic must apply with, if

anything, greater force where a state's judicial process is

at the center of the controversy.

Similarly, in Rio Grande Community Health Center, Inc.

V. Rullan, 397 F.3d 56 (1st Cir. 2005), Judge Sandra Lynch

recognized that Younger abstention "has been seen as appropriate in civil cases . . . in those situations uniquely in furtherance of the fundamental workings of a state's judicial system." Id. at 69 (citing Middlesex County, 457 U.S. at 432-33 (involving a challenge to a post-judgment appeal bond) and Juidice v. Vail, 430 U.S. 327, 335-36 (1977) (involving enforcement of civil contempt proceedings)). The question of the ongoing propriety of a state court protective order appears to fall under this "fundamental workings" rubric. While the landscape is not perfectly clear, the most plausible construction of the law, in light of these authorities, is that, where a state court protective order is ongoing and where the state's highest court has identified a path to obtain review of that order, considerations of comity recognized in Younger require this court to abstain from stepping in.

The Rooker-Feldman doctrine, which is closely related to Younger, also appears to cast a shadow over Plaintiff's case. This doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court

proceedings commenced and inviting [federal] district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005).

Here it could be argued that a final judgment regarding the propriety of the protective order has been rendered by the SJC in Abinel Zenon v. Commonwealth, 473 Mass. 1023 (2016). Unhappy with this outcome, Plaintiff is now attempting to use this federal court as a kind of appellate arena to obtain reversal of the SJC's ruling. This effort collides with the ban articulated by the Rooker-Feldman doctrine.

The analysis here is, admittedly, untidy. This derives, however, from the ambiguous procedural posture of the case. On the one hand, the state court case may be viewed as "ongoing" -- in the sense that the protective order remains in place, and the SJC has expressed a willingness to review it -- in which case resort to this federal court is barred by Younger and its progeny. On the other hand, the state court case may be viewed as over, in which case the Rooker-Feldman doctrine deprives this court

14

of jurisdiction to entertain what is, in effect, an appeal of the SJC's ruling.

Either way, the court lacks the power to act.  A litigant cannot hoist himself over these deeply anchored doctrinal hurdles just by re-labeling his case as an attempt to assert a federal constitutional right.  The issue, in both the state court and in this court, is the same: is the protective order proper?  Fortunately, the hazy doctrinal environment does not leave Plaintiff without a remedy.  A well-lit path leads back to the state district court, with an appeal of an adverse decision available to the SJC.

Even if these doctrinal hurdles were not insuperable -- and they are -- Defendant's fifth argument would be fatal to Plaintiff's claim.  As a judicial officer rendering a classically adjudicatory decision, Defendant is immune from suit.  This argument, as noted above, was not offered in the opposition to the motion to dismiss before Judge Robertson, with the result that she never had a chance to address it. This is ordinarily prohibited, for obvious reasons.  When a case is referred to a Magistrate Judge, a litigant is not permitted to hold arguments back and save them for a

subsequent objection to a disappointing recommendation.
This tactic would frustrate the entire purpose of the
referral.

Here, though, the situation is a bit unusual.
Defendant addressed her motion to dismiss to the original
complaint, which had no count explicitly pursuant to 42
U.S.C. § 1983.  The Report and Recommendation focused on a
different pleading, the amended complaint, which did contain
such a count.  This change, Defendant contends, alerted her
for the first time to the possibility of a judicial immunity
argument.  This riposte is not strong, since the presence of
claims under the First and Fourteenth Amendments in the
original complaint should have brought the issue of judicial
immunity to the surface.  Nevertheless the argument has some
force.

More importantly, considerations of comity make this
situation exceptional.  As will be seen, the argument for
judicial immunity here is powerful.  To ignore the argument,
especially when it bears on the relationship between the
state and federal judiciary, simply because it was not

raised in proper time, would be an inappropriate elevation of procedure over substance.

Immunity from suit protects a judicial officer who is engaged in "paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court." Forrester v. White, 484 U.S. 219, 227 (1988); see also Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993) ("[T]he 'touchstone' for [applying judicial immunity] has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" (internal citation omitted)).

The Supreme Court has established a two-prong test to determine whether an act is "judicial" for purposes of establishing immunity. First, the court must consider whether the function is "normally performed by a judge." Stump v. Sparkman, 435 U.S. 349, 362 (1978). This functional approach examines the "nature" and "function" of the act, not the act itself. Mireles v. Waco, 502 U.S. 9, 13 (1991) (citation omitted). Second, the court must assess "whether [the parties] dealt with the judge in his or her judicial capacity." Stump, 435 U.S. at 362.

In the First Circuit, to determine the propriety of a claim for declaratory relief under § 1983 against judges acting in their judicial capacity, the In re Justices test applies. In re Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 21 (1st Cir. 1982). The pivotal question is whether judicial officers are acting as "neutral adjudicators" or as "administrators, enforcers, or advocates." Id. at 21. When judges act purely as adjudicators, they cannot be sued for their actions. When they act as administrators, enforcers, or advocates, they may be proper parties to a § 1983 suit for declaratory relief. Id.

A judge is acting in an "administrative capacity" when, for example, she disposes of administrative matters unrelated to the courtroom, such as personnel disputes, see Forrester, 484 U.S. at 229, or when she acts pursuant to "requirements promulgated by judges themselves in the form of court rules." In re Justices, 695 F.2d at 24. Similarly, a judge may be a defendant when a litigant seeks "writs of mandamus, prohibition, and the like" in an

"ongoing controversy over [a judge's] disposition of an existing suit."  Id.

Plaintiff's argument that Defendant, in issuing the protective order, was merely effectuating court-made rules will not wash.  The issuance of a protective order is part of the bread-and-butter adjudicatory function of a judicial officer.  Indeed, as Defendant points out, in issuing the order she was acting pursuant to Rule 14(a)(6) of the Massachusetts Rules of Criminal Procedure, which regulates pretrial discovery.[1]  (Dkt. No. 30 at 11.)

In disposing of a discovery motion, Judge Guzman was performing a quintessentially "adjudicative" function inextricably related to her role in resolving disputes between parties.  While her rulings may, of course, be appealed through the state judicial machinery, she enjoys immunity from suit in this court.

---

[1]  Rule 14(a)(6) of the Massachusetts Rules of Criminal Procedure provides, in relevant part, "the judge may, for cause shown, grant discovery to a defendant on the condition that the material to be discovered be available only to counsel or the defendant."

This conclusion is supported by an abundance of case-law.  See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001) (finding that a judge was entitled to absolute immunity, where he denied a hearing-impaired litigant's motion for video-text display of the proceedings); Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012) (finding same, covering "all acts normally performed by a judge"); Dore v. Feeley, No. 12-10016-WGY, 2012 WL 194421, at *4 (D. Mass. Jan. 13, 2012) (finding same, for state-court rulings denying default judgments, denying reconsideration, denying requests for recusal, and granting judgment); Ives v. Agastoni, No. 15-30153-MAP, 2015 WL 9647559, at *3 (D. Mass. Dec. 14, 2015), report and recommendation adopted, No. 15-30153-MAP, 2016 WL 79881 (D. Mass. Jan. 5, 2016) (finding same, for judge's performance of "core judicial functions, including adjudicating disputes, weighing evidence, making factual findings, reaching legal conclusions, choosing sanctions, expounding reasons for decisions, presiding over courtroom sessions, accepting filings, and recording rulings"); Abdullah v. Ladue, No. 10-40187-RGS, 2010 WL

3983069, at *1 (D. Mass. Sept. 28, 2010) (finding same, for adjudicating a violation of probation and order for incarceration); Merritt v. McKenney, No. 13-01391-JSW, 2013 WL 4552672, at *8 (N.D. Cal. Aug. 27, 2013) (finding same, for "ruling on motions for continuances, requests relating to discovery procedures, and other judicial proceedings" that are "normal judicial functions").

"The law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly." Mullins v. Oakley, 437 F.2d 1217, 1218 (4th Cir. 1971). Under this line of authority, Defendant is clearly immune from suit in this court under 42 U.S.C. § 1983.

### IV.  CONCLUSION

For the reasons set forth above, the court declines to adopt the Report and Recommendation. (Dkt. No. 29.) Defendant's motion to dismiss (Dkt. No. 15) is hereby ALLOWED, without prejudice to Plaintiff's seeking relief from the protective order in state court. The clerk will enter judgment for Defendant. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
    MICHAEL A. PONSOR
    U.S. District Judge